1
2
3
4
5                    **IN THE UNITED STATES DISTRICT COURT FOR THE**
6                          **EASTERN DISTRICT OF CALIFORNIA**
7    **JACOB WINDING dba Top to Bottom**          **CV F 10 - 2026 AWI**
     **Cleaning Service,**                        **DLB**
8                                           )
                       **Plaintiff**,        )    **ORDER ON DEFENDANTS'**
9                                           )    **REQUEST FOR AWARD OF**
          **v.**                             )    **ATTORNEYS' FEES**
10                                          )
     **NDEX WEST, LLC as TRUSTEE;**          )    **Doc. # 62**
11   **WELLS FARGO BANK, N.A., and**          )
     **DOES 1 through 100, inclusive,**       )
12                                          )
                       **Defendant**s         )
13   _____ )
14
15         In this action for damages and declaratory relief, the court entered judgment in favor
16   of defendants NDEX West and Wells Fargo Bank, N.A. (Collectively "Defendants") on May
17   18, 2011.  Currently before the court is Defendants' motion for an award of attorneys' fees,
18   which was filed on June 15, 2011.  Defendants' claim for attorney's fees arises from a
19   promissory note secured by a trust deed on property located in Salida, California, (the
20   "Property") that plaintiff, Jacob Winding ("Plaintiff") became subject to when he accepted
21   title to the property by way of quitclaim deed.  Defendants seek attorneys' fees pursuant to
22   provisions in the promissory note for legal fees and expenses relating to their successful
23   defense of Plaintiff's action to quiet title and cancel void instruments.  For the reasons that
24   follow the court will grant Defendants' motion with minor adjustments to requested rates.
25
26                   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**
27         On April 13, 2007, a first trust deed (the "2007 Trust Deed") was executed by then
28   owners, Warner and Iris Bowers, ("Owners") using the Property to secure a loan in the

amount of $255,500.00 (the "2007 Loan").  The lender was World Savings Bank, FSB, which eventually became Wells Fargo Bank, N.A. ("Wells Fargo").  The court has previously judicially noticed documents denoting the transition of World Savings Bank, FSB, through sales, mergers and name changes to its current identity as Wells Fargo.  On December 4, 2009, the owner Warner Bowers transferred his interest in the Property via quitclaim deed to TTB Services, Inc. The quitclaim deed was recorded on December 7, 2009.  The 2007 Loan went into default at sometime prior to March 24, 2010.  Wells Fargo recorded a Notice of default on March 24, 2010, and recorded a Notice of Sale on June 25, 2010.  A trustee's sale was conducted on September 22, 2010.  Wells Fargo took title to the Property at the trustee's sale pursuant to its credit bid.

Plaintiff's First Amended Complaint ('FAC") was filed on March 16, 2011, following the dismissal of Plaintiff's original complaint pursuant to Defendants' motion to dismiss. The FAC alleged three claims for relief.  The first requested the court to declare Plaintiff's rights with regard to the priority of the Plaintiff's and Defendants' claims on the Property. The second claim for relief requested injunctive relief to hold void the promissory note secured by 2007 Deed of Trust and the Deed of Trust Upon Sale.  Plaintiff's third claim for relief alleged fraud based on Defendants' representation of the status of their Deed of Trust as superior to Plaintiff's.  Defendants successfully defended Plaintiff's action challenging their claim to their interest in the Property by way of motions to dismiss and to strike filed on March 31, 2011.  On May 18, 2011, the court granted Defendants' motion to dismiss in its entirety with prejudice and direct entry of judgment.  The court's order of judgment in favor of Defendants was entered on the same day.  Plaintiff filed notice of appeal on June 13, 2011. Defendants' motion for attorneys' fees was filed on June 15, 2011.  The hearing on Defendants' request for attorneys' fees was vacated by the court on August 23, 2011. Plaintiff's opposition to the motion for attorneys' fees was filed on September 6, 2011.

Defendants' claim to attorneys' fees is pursuant to two sections of the Promissory

Note securing the 2007 Loan.  Defendants quote Section 7(E) of the Promissory Note as

follows:

> Payment of Lender's Costs and Expenses: The Lender will have the right to be paid by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses may include, for example, reasonable attorneys' fees and court costs.

Defendants also cite a fee clause in the Deed of Trust at Paragraph 7:

> If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation , appearing in court, paying reasonable attorneys' sees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so.  Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.  ¶ I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes . . . .

Doc. # 62 at 2:22-3:9.

Plaintiff's opposition to Defendants' motion for attorneys' fees is somewhat difficult

to interpret, but Plaintiff's primary contention appears to be that Defendant's motion for

attorneys' fees is time-barred.

## LEGAL STANDARD

An award of reasonable attorney's fees is determined through the hybrid lodestar

multiplier approach.  <u>Van Gerwen v. Guarantee Mut. Life Co.</u>, 214 F.3d 1041, 1045 (9th Cir.

2000); <u>McElwaine v. U.S. West, Inc.</u>, 176 F.3d 1167, 1173 (9th Cir. 1999); cf. <u>Ketchum v.

Moses</u>, 24 Cal.4th 1122, 1133-36 (2001) (discussing the lodestar approach in California).

The Ninth Circuit has explained the hybrid lodestar approach as follows:

> The lodestar/multiplier approach has two parts.  First, a court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  See <u>D'Emanuelle [v. Montgomery Ward & Co., Inc.</u>, 904 F.2d 1379, 1383 (9th Cir. 1990)]; <u>Hensley

3

[v. Eckerhart, 461 U.S. 424,] 461 (1983). The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. See Hensley, 461 U.S. at 433. A district court should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." Id. at 434. Second, a court may adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. See Blum v. Stenson, 465 U.S. 886, 898-901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination); Hensley, 461 U.S. at 434 n.9 (noting that courts may look at "results obtained" and other factors but should consider that many of these factors are subsumed in the lodestar calculation). The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986) (quoting Blum, 465 U.S. at 898-901); Blum, 465 U.S. at 897; D'Emanuele, 904 F.2d at 1384, 1386; Cunningham v. County of Los Angeles, 879 F.2d 481, 487 (9th Cir. 1989).

Van Gerwen, 214 F.3d at 1045; cf. Ketchum, 24 Cal.4th at 1132-39 (discussing lodestar and multipliers in California).

The fee applicant "has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." Blum, 465 U.S. at 896 n.11; Dang v. Cross, 422 F.3d 800, 814 (9th Cir. 2005); Schwarz v. Secretary of Health and Human Servs., 73 F.3d 895, 908 (9th Cir. 1995). The Ninth Circuit has elaborated that:

> Once the number of hours is set, "the district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." [Chalmers v. City of Los Angeles, 796 F.2d 796 F.2d1205, 1210.] This determination "is not made by reference to rates actually charged by the prevailing party." Id. The court should use the prevailing market rate in the community for similar services of lawyers "of reasonably comparable skill, experience, and reputation." Id. at 1210-11. Either current or historical rates prevailing rates may be used. Missouri v. Jenkins, 491 U.S. 271 (1984). The use of current rates may be necessary to adjust for inflation if the fee amount would otherwise be unreasonable; the district court must look to the "totality of the circumstances and the relevant factors, including delay in payment." [Jordan v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir. 1987).]

D'Emanuelle v. Montgomery Ward & Co., Inc., 904 F.2d 1379, 1384 (9th Cir. 1990); cf.

4

Ketchum, 24 Cal.4th at 1139 ("Indeed, the 'reasonable hourly rate [used to calculate the lodestar] is the product of a multiplicity of factors . . . the level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the case.'").  The "relevant legal community" in the lodestar calculation is generally the forum in which the district court sits.[1]  Mendenhall v. NTSB, 213 F.3d 464, 471 (9th Cir. 2000); Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997); Schwarz, 73 F.3d at 906; Deukmejian, 987 F.2d at 1405; Davis v. Mason County, 927 F.2d 1473, 1488 (9th Cir. 1991); cf. Childrens Hospital and Medical Center v. Belshe, 97 Cal. App. 4th 740, 782-783 (2002) (upholding rate in a case tried in San Francisco after trial court reviewed rates of attorneys in the San Francisco Bay area); A & S Air Conditioning v. John J. Moore Co., 184 Cal.App.2d 617, 621 (1960) ("The determination of reasonable attorneys' fees is controlled by the amounts customarily charged in the locale of the action, here Alameda County.").

## DISCUSSION

### I. Timeliness of Motion

Plaintiff contends that Federal Rules of Civil Procedure require that a motion for attorneys' fees be filed within 14 days of the date of judgment in an action, and that Defendants' motion for attorneys' fees was not filed within the required time.  Although Plaintiff does not specifically cite the legal source for his contention that motions for attorneys' fee must be filed within 14 days of the date of judgment in an action, the court assumes that Plaintiff's source is Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure. While Fed.R.Civ.P. Rule 54(d)(2)(B)(i) mandates that motions for attorney's fees be filed no later than fourteen days after judgment, the rule also provides the fourteen day rule does not apply if a statute or court order provides otherwise. Fed.R.Civ.P. 54(d)(2)(B)(i). In this

---

[1]There are narrow exceptions to the general rule that the relevant legal community is the forum in which the court sits.  See Schwarz, 73 F.3d at 907; cf. Horsford v. Board of Trustee of California State Univ., 132 Cal.App.4th 359, 396-97 (2005) (finding court abused discretion in not considering "out of town" San Francisco rates where plaintiff was unable to obtain local counsel).  Plaintiff, however, does not argue that a recognized exception to the general rule applies.

district, Local Rule 54-293 provides that motions for attorney's fees shall be filed within thirty days after entry of judgment. Judgment in this case was entered on May 18, 2011 and the motion for attorneys' fees was filed twenty-seven days later on June 15, 2011.  (Docs. 56 and 62).  Therefore, Defendants' motion for attorneys' fees is timely. <u>Eastwood v. National Enquirer, Inc</u>. 123 F.3d 1249, 1257(9th Cir.1997) (Local rules are standing orders for purposes of Rule 54(d)).

## II.  Other Considerations

In addition to its timeliness requirement, Local Rule 54-294 requires that a party moving for an award of attorneys' fees show: (1) that it was the prevailing party; (2) that it is eligible to receive an award of attorneys' fees; (3) the amount of fees requested; (4) justification for the amount of fees sought including time and labor required, skill required and novelty of the action, and conformity with prevailing local fees; and (5) such other matters as statute or the court may require.  Beyond Plaintiff's contention as to the timeliness of Defendants' motion, there is no real dispute that Defendants prevailed and that Defendants are eligible under the terms of the Promissory Note and Deed of Trust to be compensated for attorneys' fees expended to defend their interest in the Property.  Therefore, the court will focus its discussion on Defendants' justification for the amount of fees requested including principally the number of hours billed and the hourly billing rate.

### A.  Personnel Involved

Defendants list the following personnel as having rendered billable legal services in the defense against Plaintiff's action:

1.    Mark T. Flewelling, J.D. ("MTF")[2]; lead attorney and partner citing 30 years experience in litigating business and banking cases in federal and state courts.

2.    Daniel Armstrong, J.D. ("DAA"); citing one year of experience in

---

[2]    Initials are those used by Defendants on the invoices provided to list time worked by individual personnel in Exhibit A to the Declaration of Mark T. Flewelling in Support of Motion for Attorneys' Fees.  Doc. # 62-1.

representing financial institutions in federal and state court.

3.   Jeremy Shulman, J.D. ("JES"); citing nine years experience in litigating business and commercial disputes, including real estate.

4.   Sandra Dries ("SAD"), Legal Assistant; Malinda Sinclair ("MSS"), Paralegal; and Helene Saller ("HPS"), Paralegal.

**B. Time Billed**

Exhibit A to the Declaration of Mark T. Flewelling in Support of Motion for Attorneys' Fees, Document number 62-1 (hereinafter "Flewelling Dec.") consists of a series of invoices for legal services rendered by month beginning on October 4, 2010 and ending on May 30, 2011.  The court has reviewed the invoices provided and finds that the categories of activities billed generally track Defendants' responses to Plaintiff's pleadings and generally reflect effort relating to documents that have been filed in this case.  The court has reviewed the amount of time billed per activity per individual and can see no obvious instances of inappropriate amounts of time billed.  The court notes that Plaintiff has not alleged any instance of inappropriate billing of time.

The court approves the amount of time (hours) billed per attorney per year as follows:

| Attorney | 2010 Hours | 2011 Hours |
|---|---|---|
| MTF | 9.2 | 34.4 |
| DAA | 50.9 | 16.0 |
| JES | 0.0 | 4.3 |

Similarly, the court approves the amount of time (hours) billed per support person per year as follows:

| Support Person | 2010 Hours | 2011 Hours |
|---|---|---|
| SAD | 2.60 | 0.0 |
| MSS | 0.7 | 1.1 |
| HPS | 3.7 | 2.8 |

7

### *C.  Rates of Compensation*

Attorneys Flewelling and Armstrong requests rates of compensation of $325 per hour and $200 per hour respectively for work performed prior to January 1, 2011, and $350 per hour and $265 per hour respectively for work performed thereafter.  The rates of compensation requested for the remaining personnel reflect a single rate for both 2010 and 2011 as follows:

Attorney:

     Jeremy Shulman          $280/hour

Support Staff:

     Sandra Dries             $125/hour
     Malinda Sinclair          $140/hour
     Helene Saller            $160/hour

The court finds that the rates billed by Jeremy Shulman, Sandra Dries, Malinda Sinclair and Helene Saller are reasonable and within the range of rates normally billed for like services in the Fresno Area.  The court finds that the rate of $325 per hour for the services of a lead attorney with 30 years experience is within the range normally billed in the Fresno area for legal services in cases such as this.  See Johnson v. JP Morgan Chase Bank, 2010 WL 4977648 (E.D. Cal. 2010) at *2 ($300 per hour for lead attorney in FDPCA case is reasonable).  However, the court is not aware of any basis for increment of approximately 8% that would have occurred between 2010 and 2011.  So far as the court can determine, there has been no general increase in legal fees over the past year nor has anything occurred with regard to this particular case that would call for an increase in fees.  The court will approve the rate $325 per hour for Flewelling for services performed in both 2010 and 2011.

With regard to Armstrong, there is a purpose in increasing billing rates apart from inflationary adjustment where an individual transitions from the first year of service to the second or third.  However, the court finds that an increase of fees billed on the order of 33% for an increase in experience of one year is not supported by local experience.  The court

8

finds that an increase in fees billed by Armstrong from $200 per hour in 2010 to $225 per hour in 2011 is reasonable.  To the extent Defendants look to the complexity of Plaintiff's action to justify higher fees, the court finds there is nothing about this case that suggests an unusual or novel legal challenge.  Although Plaintiff's frequent and sometimes imaginative pleadings have necessitated more work than necessary, the court has found that, for the most part, the legal propositions invoked have been usual and well settled.  The court therefore finds no "premium" rate of compensation is due based on novelty or legal difficulty.

### D.  Other Factors/Calculations

In the invoices submitted and in Defendants' motion, there are two notations labeled "MTF Adjustments" which correspond to two unexplained write-downs of $3,000 and $2,000 subtracted from the October-November 2010 and the March 2011 invoices, respectively.  Since Defendants have incorporated these write-downs in their calculations of attorneys' fees, the court will do likewise.  As Defendants point out the court has previously awarded attorneys' fees in this action in the amount of $2,480 in connection with attorneys' fees incurred in Defendants' motion to expunge notice of *lis pendens*.  That amount will also be subtracted from the total award.  In addition, Defendants request an amount estimated at between $1,575 and $2,975 for fees relating to the instant motion for attorneys' fees.  In this circuit it is well established that a party that is entitled to reasonable attorney's fees is entitled to a reasonable fee for the time expended in the attorney's fees application.  See Serrano, 32 Cal.3d at 631 ("the time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award").  The range of fees anticipated by Defendants represents Defendants' anticipation of a need to respond to Plaintiff's opposition to the fee request and need for court hearing on the motion.  Since reply to Plaintiff's opposition was not need and since the hearing on Defendants' motion was vacated, the court finds that the lower figure of $1,575 is appropriate.  That amount will be added to Defendants' award of attorneys' fees.

THEREFORE, Pursuant to the foregoing discussion, the court approves time and rates in this action as follows:

| Individual | Hours | Hourly Rate | Total Amt. |
|---|---|---|---|
| MTF | 43.6 | $325 | $14,820 |
| DAA - 2010 | 50.9 | $200 | $10,180 |
| DAA - 2011 | 16.0 | $225 | $3,600 |
| JES | 4.3 | $280 | $1,204 |
| SAD | 2.6 | $125 | $325 |
| MSS | 1.8 | $140 | $252 |
| HPS | 6.5 | $160 | $1040 |

Sub-Total:                                        $31,421

MTF Adjustment                             ( $5,000)

Prior Award Adjustment                  ($2,480)

Sub-Total                                         $23,941

Defendants' Motion on Fees            $1,575

**TOTAL AWARD**          $25,516.00

It is therefore hereby ORDERED that Defendant Wells Fargo is AWARDED attorneys' fees as the prevailing party against Jacob Winding dba Top to Bottom Cleaning Services in the SUM OF $25,516.00.

IT IS SO ORDERED.

Dated:    November 1, 2011                          _____

                                                    CHIEF UNITED STATES DISTRICT JUDGE